# Barr *versus* Reitz.

1. Actual change of possession must accompany a voluntary sale of chattels, and the possession must continue in the purchaser.

2. When there is not such change the sale is fraudulent *per se*, and the court is bound to tell the jury so. The burthen of proving delivery lies on the purchaser.

3. A temporary change and early return of the property into the hands of the vendor leaves it exposed to executions; a merely formal or constructive delivery will not defeat them.

4. In considering what is actual delivery the nature of the property and circumstances attending the sale, and whether the property is capable or not of easy delivery, must be taken into account.

5. There must be an actual separation of the property from the possession of the vendor at the sale or within a reasonable time afterwards, according to the nature of the property.

6. It is not the place the *property* occupies that gives color of possession to the vendor; but the connection the *place* has with the *vendor*.

7. The delivery of a key when goods are locked up, is a delivery of the goods, and when the key is delivered to the vendee and the vendor removes from the house, it is as effectual as if the vendee removed the goods from the house.

ERROR to the Court of Common Pleas of *Jefferson county.*

This was an action of trespass, commenced May 27th 1865, by Andrew Barr against M. W. Reitz, who was sheriff, for seizing and selling under an execution against one Brown goods claimed by Barr.

Brown occupied a house of Darrah's; he had leased it for a year,—which expired April 1st 1865,—and held over without any further contract. On the 3d of May, he sold his personal property to Barr by bill of sale; part of the consideration was a debt due to Barr for labor, the remainder was paid in money. All the property was in the house, except a cow and a few articles on the outside. Some of the articles which were outside were put into the house by Barr. Brown gave him the key. Barr locked the house and kept the key. Barr had been recently married, but had not been at housekeeping. Brown being about to leave the neighborhood, remained in the house till the 7th or 8th of May, when he moved from the county. There was evidence that the key given to Barr was retained by him and that the key by which Brown afterwards entered the house was a different key. Jacob Kroh entered judgment May 10th 1865 against Brown on a note from Brown to him; issued an execution on the same day and levied on the property sold to Barr. At the levy and subsequent sale, Barr notified the sheriff that the property was his, and warned the sheriff against levying and selling.

The court below affirmed the following point of the defendant: "The bill of sale from Brown to Barr is fraudulent and void as to creditors of Brown, because the property therein mentioned was

not delivered at the time of sale;" and there being a verdict for the defendant, this answer was assigned for error.

*W. P. & G. A. Jenks*, for plaintiff in error, cited Levy *v.* Wallis, 4 Dallas 159; Waters *v.* McClellan, Id. 196; Carpenter *v.* Mayer, 5 Watts 483; McVicker *v.* May, 3 Barr 224; Hugus *v.* Robinson, 12 Harris 9; Dunlop *v.* Bournonville, 2 Casey 72.

*A. L. Gordon*, for defendant in error, cited Carpenter *v.* Mayer, 5 Watts 483; Streefer *v.* Eckert, 2 Wh. 302; Hoffner *v.* Clark, 5 Id. 545; Hoofsmith *v.* Cope, 6 Id. 53; McBride *v.* McClelland, 6 W. & S. 94; Jordan *v.* Frink, 3 Barr 442; Chase *v.* Ralston, 6 Casey 539; Milne *v.* Henry, 4 Wright 358; Brawn *v.* Keller, 7 Id. 106; Steelwagon *v.* Jeffries, 8 Id. 411.

The opinion of the court was delivered, January 6th 1867, by

AGNEW, J.—It is settled law that a voluntary sale of chattels must be accompanied by an actual change of possession, and the possession must continue in the purchaser. A temporary change and early return of the property into the hands of the vendor leaves it still exposed to the executions of creditors. A merely formal or constructive delivery will not defeat an execution. When such delivery does not attend the sale it is fraudulent *per se*, and the court is bound to tell the jury so.

The burden of proving the delivery lies on the purchaser, who must establish his possession by sufficient evidence. The authorities to sustain these positions are so numerous it would be an affectation of research to cite them all. Many of the cases will be found collected in the opinion delivered in Chase *v.* Ralston, 6 Casey 539. See also Milne *v.* Henry, 4 Wright 358; Brawn *v.* Keller, 7 Id. 106; Steelwagon *v.* Jeffries, 8 Id. 411. But in considering the question what is an actual delivery, the nature of the property and circumstances attending the sale must be taken into the account. We are not, in carrying out a mere rule of policy, to confound all distinctions between that which is capable of easy delivery and that which is not. Squared timber lying in the woods, or piles of boards in a yard, are incapable of the same treatment as a piece of cloth or a horse: Chase *v.* Ralston, 6 Casey 538; Haynes *v.* Hunsicker, 2 Id. 58; Herron *v.* Fry, 2 Penna. R. 263. So there are many cases which allow the force of those circumstances which take away any false color or appearance of ownership remaining in the seller: McVicker *v.* May, 3 Barr 224; Jordan *v.* Frink, Id. 442; Linton *v.* Butz, 7 Id. 89; Faunce *v.* Lesley, 6 Id. 121; Hoofsmith *v.* Cope, 6 Whart. 53; Brady *v.* Haines, 6 Harris 113; Forsyth *v.* Matthews, 2 Id. 100; Graham & Mellon *v.* McCreary, 4 Wright 515. To

3 P. F. SMITH—17

these may be added Dunlap *v.* Bournonville, 2 Casey 72, and Hugus *v.* Robinson, 12 Harris 9.   Of Dunlap *v.* Bournonville it was said, in Steelwagon *v.* Jeffries, 8 Wright, that it stands on the very outer verge of settled principles, and perhaps the same remark may be made upon Hugus *v.* Robinson.   But without affirming their doctrines to the extent these cases might seem to warrant, it is sufficient to say they are illustrations of the principle we have stated, that the circumstances may prevent the court from pronouncing it a fraud *per se*, and carry the case to the jury on the facts with proper instruction from the court on the law, if the jury find the delivery of possession merely formal or constructive. The principle which underlies all the cases is, that there must be an actual separation of the property from the possession of the former owner at the time of the sale, or within a reasonable time afterward, according to the nature of the property delivered.

But in effectuating this change, what difference does it make whether the property be removed from the owner or the owner remove from the property ?   It is not the mere place the property occupies which gives color of possession to the former owner, but it is the connection the place itself has with the owner indicating his apparent control over it.   Graham & Mellon *v.* McCreary, and some others of the cases cited, sustain this assertion, if authority be needed to prove so plain a proposition.   In the present case the court affirmed the defendant's point that the bill of sale from Brown to Barr was fraudulent and void *because* the property therein mentioned was not delivered at the time of sale.   This took the question of delivery from the jury, and affirmed that the sale was a legal fraud ; and the question is, therefore, whether the plaintiff had given such proof as entitled him to have the question of possession submitted to the jury.   We think there was such evidence.   Barr was a young married man, about going to housekeeping, and needed the articles, which were chiefly household goods sold to him by Brown, who was then on the point of moving out of the county.   Brown owed him a considerable sum for labor, which was accounted for in the sale and the balance paid by Barr in money.   The arrangement was made verbally between them a day or two before the 3d of May, and was on that day finally consummated by a written bill of sale and delivery of possession by Brown to Barr.   The key of the house was given by Brown to Barr, who gathered up some articles lying outside, put them into the house and locked it up.   Brown was preparing to leave the county, but not being quite ready to go, remained in the house from three to six days, the witness being unable to specify the precise day he left.   In the mean time, he must have used another key, as the testimony of Margaret Haugh tends to show.   He then left, went out of the county and did not return, the property remaining locked up, and the key in the pos-

[Barr *v.* Reitz.]

session of Barr until the sheriff made his levy, which was from three to six days after the departure of Brown. Before the levy, and also on the day of sale, Barr gave the sheriff notice that the property was his and not to levy or sell. Brown had held the house under a verbal lease for a year, which expired on the preceding 1st day of April, and held on (as his landlord testified) without anything being said, but leaving it very manifest that in moving away he abandoned the possession of the premises.

Under these circumstances clearly this was not a case to be taken from the jury and pronounced upon by the court as a legal fraud. The delivery of possession was not merely formal or colorable ; but, by the removal of Brown and his entire disconnection from it, the property was left in the possession and control of Barr, who held the key and thus controlled the house in which it was locked up. He controlled it just as actually as though the property had been removed from Brown.

The separation of the property from Brown was complete. How far Brown might be liable to Darrah, his landlord, for the rent of a second year by his temporary holding over, is not a question in this case. The fact is clear Brown abandoned the possession of the premises, not intending to return ; that he did not return, and that he left the key in possession of Barr.

The delivery of a key where goods are locked up is a delivery of the goods themselves. It may be symbolical only, and not actual, when the seller still remains in apparent connection with the goods ; but here the seller had left the possession after an actual delivery, and no longer appeared to control them, while the time of his departure was not unreasonably delayed, and the goods themselves were not ordinary merchandise, but household goods.

The judgment must therefore be reversed, and a *venire facias de novo* awarded.