## Janney v. Howard, Appellant.

*Assignments of error—Exception to charge—Act*, 1877.

Under the Act of March 24, 1877, § 2, P. L. 38, error may be assigned in respect to any part of the charge of the court which has been filed, with or without request, and whether excepted to in the court below or not.

The office of the bill of exceptions is to bring upon the record that which would otherwise not appear. The Act of 1877 makes the charge and answers to points part of the record, and an exception is therefore unnecessary.

In this case, the assignment of error was allowed to be filed on the argument of the case in the Supreme Court.

*Sheriff's interpleader—Sale and delivery—Creditors.*

On the trial of a sheriff's interpleader to determine the ownership of property embraced in a bill of sale, levied upon as the property of the vendor and claimed by the vendee, the evidence on the part of the claimant was to the effect that, upon the execution of the bill of sale of the horses, wagons and harness prior to the levy, the vendor declared in the presence of witnesses that he delivered possession of the property to the vendee, and delivered the key of the stable in which the horses and wagons were kept, and went away from it and stayed away;

that the vendee took possession and left a man in charge for himself; that the drivers who had formerly been in the vendor's employ entered into the vendee's service, drove the horses for him, collected bills for him and paid the money over to him; that bills were made out to patrons in his name, and that the execution creditor and others had notice of the sale and change of possession. The lease for the stable continued in the vendor's name, but the vendee paid the rent. The vendor's name remained upon the stable and wagons.

*Held*, that the court below committed no error in refusing to give binding instructions that there had not been such change of possession as the law requires in such cases: Barr v. Reitz, 53 Pa. 256; Garretson v. Hackenberg, 144 Pa. 107, and Hugus v. Robinson, 24 Pa. 9, applied; Stephens v. Gifford, 137 Pa. 219, distinguished.

*Material misdirection by the court.*

Where the court made the validity of the transaction as between the vendor and vendee the test of its validity as against the execution creditor, the supreme court will reverse, although the court subsequently gave correct instructions as to change of possession, as the erroneous instructions may have misled the jury.

Argued April 1, 1892.  Appeal, No. 212, Jan. T., 1892, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1891, No. 871, for plaintiff, in sheriff's interpleader to try title to personal property levied on by defendant as the property of one Kelly and claimed by plaintiff.  Before STERRETT, GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

The facts appear by the opinion of the Supreme Court.  The evidence was conflicting as to the date of the bill of sale.  Defendant offered evidence to prove that it was May 21 originally and that it had been changed to May 25.  It was admitted that on May 23, plaintiff sent to defendant an order for horse feed in Kelly's name, but plaintiff denied that the date on the bill of sale had been changed.  It was also admitted that Kelly's name was still on the stable and the wagons at the date of the levy, May 29.  The lease continued in Kelly's name, but the rent was paid by plaintiff.  Plaintiff put in charge of the business the same man who had been in charge under Kelly.  The business was teaming or hauling.

The court, WILSON, J., charged as quoted in the opinion of the Supreme Court; and, on the question as to the change of the name on the wagons, as follows: [" There should be, I should say, in such case, a reasonable time which the purchaser ought to have to make such subsequent changes as were ap-

propriate to the change of ownership."] [4]   But the court left it to the jury.

After reviewing the evidence, the court continued :·

" Was that under the circumstances such a change of possession as was reasonable ?   Was it such a change as, considering the nature of the articles, amounted to an actual change of possession and notice of such change to those who had been in the habit of dealing with Kelly ?   If so, then so far as that question is concerned you are to regard it as a change.   If upon the other hand it was not, if it did not practically give notice to those who had been dealing with Kelly that there was a change, if everything went on just as before, if the indications of the business were the same as before, if so far as outsiders were concerned everybody would suppose that Kelly was still in possession, then you can and ought to infer that there was no such change of possession as would protect Janney, and in that event, notwithstanding his intentions may have been entirely honest, the law would stand in the way, and he could not retain the possession and ownership against a judgment creditor."

Defendant's points, *inter alia*, as follows, were refused by the court because they asked for binding instructions :

" 1. There was no such change of possession of the horses and wagons in controversy from Kelly to Janney as will protect the said horses and wagons from Kelly's creditors and your verdict must be for the defendant. [5]   .

" 2. The fact that the vendee, Janney, allowed the horses and wagons to continue to remain in the stable of the vendor, Kelly, after the alleged sale, and the fact that Kelly's name was allowed to remain on the stable and wagons after the alleged sale and the fact that Kelly and his men remained in possession of said stable, horses and wagons after the time of alleged sale, renders the said sale fraudulent in law and void without reference to the intent of the parties, and your verdict must be for the defendant. [6]   .

" 3. The delivery of these horses and wagons by Kelly to Janney under the bill of sale was merely formal and constructive and is void in law as against the defendant Howard, the execution creditor of Kelly. [7]

" 4. The horses and wagons were capable of actual delivery.

It was the duty of Janney to have at once taken actual possession of the horses and wagons at the time of sale and to have removed them from Kelly's stable and Kelly's possession, and to have done all things in his power to render the change of possession complete, open and notorious. Under the evidence no actual delivery took place and the alleged sale by Kelly to Janney is void as to Kelly's creditors, independent of the question as to whether the sale by Kelly to Janney was *bona fide* and for value. [8]

" 7. Under all the evidence your verdict must be for the defendant. [9]

" 8. Concurrent possession is such as will lead persons to infer that there has been no actual change. The fact that Janney left the horses in Kelly's stable and permitted Kelly and his men to use the horses and wagons marked in Kelly's name, and permitted and authorized Kelly to obtain feed for the horses in his name after the alleged sale, is concurrent possession and renders the alleged sale void in law." [10]

Verdict for plaintiff and judgment thereon, whereupon defendant appealed.

*Errors assigned, inter alia,* were (4) portion of charge in brackets, quoting it; (5–10) refusal of points, quoting them. At the argument, an additional assignment, covering the portion of the charge quoted in the opinion of the Supreme Court, was filed by leave of court.

*S. Morris Waln,* for appellant.

*Joseph J. Broadhurst,* for appellee.

OPINION BY MR. JUSTICE HEYDRICK, July 13, 1892.

At the argument leave was asked to file an additional assignment of error, and this request was opposed on the ground that exception had not been taken in the court below to the portion of the charge which was the subject of the proposed assignment. No formal bill of exceptions is to be found in the record, nor is there any other means of ascertaining the truth about which the counsel differ. This, however, is immaterial. The office of the bill of exceptions is to bring upon the record that which otherwise would not appear, and consequently could not be noticed by the superior court. Until the passage of the Act of Feb. 24, 1806, there was no other means of

getting the charge of the trial judge upon the record. But that Act gave to either party the right to demand that the charge be reduced to writing and filed of record; and this, it was held in Downing v. Baldwin, 1. S. & R. 298, made it, when filed, a part of the record, and superseded the necessity of a bill of exceptions. Whether it was necessary that it should appear affirmatively of record that the charge was filed in compliance with the requirement of a party to the cause was a question upon which the court drifted about, but it was finally settled in Lancaster v. De Normandie, 1 Wh. 49, that an assignment of error would not be considered when it did not appear by the judge's certificate or memorandum that he filed the charge at the instance of one of the parties. And so the practice continued until the passage of the Act of March 24, 1877, P. L. 38. The first section of that Act was intended to remedy an evil pointed out by Woodward, C. J., in Wheeler v. Winn, 53 Pa. 122, and not fully remedied by the Act of April 15, 1856, P. L. 337. The first section makes it the duty of the trial judge to answer in writing, to be read to the jury, all points for charge which shall be presented to him before the close of the argument to the jury, and provides that " the said points and answers thereto shall be filed immediately by the court or judge and become part of the record of the case for the purposes of error." The second section was manifestly drawn with reference to the construction put upon the Act of 1806 in Lancaster v. De Normandie. It is in these words: " The charge and answer of the court to points in all cases where filed shall be part of the record for the purpose of assignment of errors." If it was not intended to dispense with the necessity for the appearance on the record of a request to file the charge it serves no purpose whatever, and it is not to be presumed that it was enacted without a purpose. Under it error may be assigned in respect to any part of a charge which has been filed, with or without request, and whether excepted to in the court below or not. The charge in this case was filed in the court below and sent up as part of the record, and, therefore, and because it seems necessary to the proper disposition of the cause, the additional assignment of error was allowed to be filed.

That assignment of error is in respect to that portion of

the charge in which the learned trial judge said : " Now, if
Janney was legally, under all the circumstances of the case
which you have heard, the owner; if you shall be satisfied
upon consideration that, as between Kelly and himself, Janney
was to be considered at that time the owner of this property,
that he had acquired a valid title to it by the purchase, which
he alleges to have taken place, then, notwithstanding the fact
that Kelly had previously been the owner of the property,
notwithstanding the fact that Kelly owed Howard the amount
represented by Howard's indebtedness, your verdict would
have to be, would properly be as a matter of honesty and
ought to be as matter of law, in favor of the claimant, Mr.
Janney." The vice of this instruction is that it makes the
validity of the transaction as between Kelly and Janney the
test of its validity as against the execution creditors of the
former, whereas it is but one step towards perfection of title
in the latter case. A sale without delivery of possession
divests the ownership of the vendor as between him and his
vendee : Hetrick v. Campbell, 14 Pa. 263 ; and the purchaser
may, if the possession be withheld, maintain replevin for the
goods : Boyle v. Rankin, 22 Pa. 168. But as against cred-
itors and subsequent *bona fide* purchasers without notice, re-
tention of possession is *per se* a fraud. This proposition has
been maintained as a rule of policy for the prevention of fraud
in an unbroken line of decisions from Clow v. Woods, 5 S. &
R. 275, to the latest case on the subject, and is not contro-
verted here. Indeed it seems to have been a mere slip on the
part of the learned judge to make the test which he did, of
the validity of the sale to Janney as against the execution cred-
itor, because, while it was but faintly denied that as between
Kelly and Janney the sale was *bona fide,* he was careful to
instruct the jury that, in order to justify a finding in favor of
the claimant, they must find that there had been such change
of possession as would indicate a change of ownership. But
as it is impossible to say how far the erroneous instruction
may have misled the jury the judgment must be reversed.

None of the other assignments of error are sustained.
Those, only, which relate to the subject of change of posses-
sion require notice. The complaint of the fifth to the tenth
assignments inclusive is that the court did not give binding

instructions that there had been no such change of possession as the law requires in such cases. To have so charged would have been clear error. It was in evidence that upon the execution of the bill of sale Kelly declared in the presence of witnesses that he delivered possession of the property to Janney and thereupon gave him the key of the stable in which the horses and wagons were kept, and went away from it, and staid away ; that Janney took possession and put a man in charge for himself ; that the drivers who had formerly been in Kelly's employ entered into Janney's service, drove the horses for him, collected bills for him and paid the money over to him; that bills were made out to patrons in his name, and that the execution creditor and others had notice of the sale and change of possession. If the facts were as stated the case was materially different from Stephens v. Gifford, 137 Pa. 219. In that case there was no pretence that the claimant actually took possession of the property in person, or that it was used in and about his business, or that any sort of notoriety attended the transfer of title to him. The horses remained in the stable of the vendor by his permission, and the stable was within an enclosure which was in his actual visible possession. They therefore remained in the apparent possession of the vendor. The only point of similarity in the two cases is that the same person continued to groom and drive the horses, but it did not appear in Stephens v. Gifford, as in the present case, that he was notoriously using them in the purchaser's business. The case more nearly resembles Barr v. Reitz, 53 Pa. 256, in which the delivery of the key of a house followed by removal of the tenant was held to be a good delivery of possession of the goods contained in it by the tenant to one to whom he had sold them. The language of Agnew, J., in that case needs only the change of the names of the parties to be applicable to this if the facts be as testified by the claimant. He said: " The delivery of possession was not merely formal or colorable ; but, by the removal of Brown and his entire disconnection from it, the property was left in the possession and control of Barr, who held the key and thus controlled the house in which it was locked up. He controlled it just as actually as though the property had been removed from Brown. The separation of the property from Brown was complete. How far Brown

might be liable to Darrah, his landlord, for the rent of a second year by his temporary holding-over is not a question in this case." Nor is it material in the present case that the relation of landlord and tenant existed between Kelly and some other person in respect to the stable ; that could not affect in the least the fact of actual visible possession. Neither is the fact that Kelly's name remained upon the wagons of controlling importance : Hugus v. Robinson, 24 Pa. 9. Less unequivocal indicia of a changed ownership than were testified to by the plaintiff and his witnesses were held in Garretson v. Hackenberg, 144 Pa. 107, sufficient to protect a purchaser. But because of the error in the charge already pointed out, the judgment must be reversed.

The judgment is reversed and a venire facias de novo is awarded.