# Alexander *versus* Weidner.

1. The Acts of 24th February 1806 and of 15th April 1856, both expressly require that there shall be a request by one or the other of the parties to an action before the judge's charge can become a part of the record, and where on the trial below the defendant put certain points to the court in writing, to the answers to which he did not except and the plaintiff did, and the answers of the court were filed, but the record did not show that they were filed at the request of either party, they are no part of the record on which the defendant can assign error, and he cannot avail himself of the exceptions of the opposite party.

2. The Act of 17th April 1856, the third section of which requires the court to charge the jury on particular points of law, &c., at the request of either party, is not a general law and applies only to the courts of the Sixth Judicial District.

3. The legislation requiring that the charge of the court be reduced to writing and filed at the request of counsel, and the judicial interpretation of this legislation reviewed and commented on by SHARSWOOD, J.

October 18th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.  WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Clarion county:* Of October and November Term 1876, No. 86.

This was an action of assumpsit, brought by M. A. K. Weidner against William T. Alexander, to recover one-half the amount of a note made by Brown and Galey to the order of Alexander.

On the trial before Jenks, P. J., the defendant submitted two points, both of which the court affirmed, but the first with a qualification.

To these answers of the court the plaintiff excepted, but the defendant did not.   The verdict was for the plaintiff, and judgment was entered thereon.

The defendant took this writ, and the error assigned was the qualification in the affirmance of his first point.

It appeared that the points of defendant and the answers thereto were filed with the record, but there was nothing contained therein to show that they were filed at the request of either party to the action.

*Corbett & Clarke* and *Knox & Maffett,* for plaintiff in error.— The Act of 24th of February 1806 (Pamph. L. 334) provided: "If either party, by himself or counsel, require it, it shall be the duty of the said judges, respectively, to reduce the opinion so given, with the reasons therefor, to writing, and file the same of record in the cause.   Under this act it was necessary that a request to file the charge appear of record: Lancaster *v.* De Normandie, 1 Whart. 49 ; Bratton *v.* Mitchell, 5 Watts 71, overruling Brown *v.* Caldwell, 10 S. & R. 114, 115."   By the Act of 15th of April 1856 (Pamph. L. 337), it was provided as follows: "The president judges of the several Courts of Common Pleas of this Commonwealth shall,

[Alexander v. Weidner.]

in every case tried before them, respectively, at the request of any party or attorney concerned therein, reduce the whole opinion and charge of the court, as delivered to the jury, to writing, at the time of the delivery of the same, and shall forthwith file the same of record." It is evident that this latter act entirely dispensed with the necessity of having it appear of record that the filing of the opinion, or charge, was at the request of one of the parties or counsel. The repetition of the verb "shall," in the latter member of the sentence, dispenses with any request to file of record. In this case the court was requested to charge on certain points, in writing, which they did, and filed the same of record. In addition, plaintiff excepted to the answer, and the court sealed a bill of exceptions and filed their answer, with the points and such bill of exceptions. Under either of the acts before cited, if the charge be placed on record at the instance of either party, either may assign error. Here the bill of exception would amount to a request to file. The judge, delivering the opinion of the court, is not bound to file his whole charge. His answer to the points is enough: Reigart v. Ellmaker, 14 S. & R. 124; Munderbach v. Lutz, Id. 125; Bitzer's Executor v. Hahn, Id. 240. Written points presented by counsel, and answers of the court filed in the cause, become part of the record, and may be assigned for error: Wheeler v. Winn, 3 P. F. Smith 122.

*Wilson & Jenks*, for defendants in error.—No exception was taken by the plaintiff in error to the charge of the court, nor to the qualification to the answer to the point submitted, and no notice should be taken of it in a court of error: Moreland Township v. Davidson Township, 21 P. F. Smith 371; Holden v. Cole, 1 Barr 303.

Mr. Justice SHARSWOOD delivered the opinion of the court, October 30th 1876.

The Act of Assembly of February 24th 1806, Pamph. L. 334, entitled "An act to alter the judiciary system of this Commonwealth," with another which followed close upon its heels, the Act of March 21st 1806, Pamph. L. 558, entitled "An act to regulate arbitrations and proceedings in courts of justice," were intended by that legislature to inaugurate a new administration of justice, in which the profession of the law might be entirely dispensed with, and every man be his own lawyer and conduct his own suits. It need not be said that it entirely failed to secure its main object, and that the only class of men benefited by it was that at whose business it was aimed. An abundant harvest of litigation followed, and its deleterious influence has left many marks upon our jurisprudence which still remain to impede and embarrass the speedy and regular course of justice in civil proceedings. " Of the object of these acts," says Chief Justice GIBSON, in Wike v. Lightner, 1

[Alexander *v.* Weidner.]

Rawle 290, "those who remember the temper of the times can best judge." Speaking of the 25th section of the Act of February 24th 1806, to be presently referred to, Mr. Justice DUNCAN, in 1823, remarked in Brown *v.* Caldwell, 10 S. & R. 114: "The act making it the duty of courts, on the request of either party, to reduce their opinion with the reasons to writing and file it of record, has been found very inconvenient in practice, however beautiful in theory; and though the provision appears, on first sight, very simple, yet experience has shown it to be not a little complex. It has instead of easing the suitor proved a source of vexation, perplexity and delay, and sometimes of actual injustice. It requires legislative interposition, either by its total abolition or pruning many of the luxuriant branches which have grown from it and choked the progress to the termination of controversies. The bill of exceptions, its form, its bearing, were well understood and quite adequate to spreading on the record all legal points decided by the courts in their instructions to juries." So Chief Justice TILGHMAN, in Reigart *v.* Ellmaker, 14 S. & R. 124, speaking of the same section, observed: "This provision, though undoubtedly intended for a good purpose, has produced consequences of which the legislature was not aware when it was passed. It may have done some good, but on the whole it is the general sentiment that it has caused much trouble, expense and delay, and thrown many obstructions in the way of a speedy and fair administration of justice." The opinions of these very eminent jurists, however, have produced no effect upon the legislature. Not only does the Act of 1806 stand unrepealed on the statute book, but it has been extended by the Act of April 15th 1856, Pamph. L. 337, so as to require that the president judge, " at the request of any party or attorney concerned, shall reduce the whole opinion and charge of the court as delivered to the jury to writing at the time of delivery of the same, and shall forthwith file the same of record." This had been held by this court not to be required by the Act of 1806, in Reigart *v.* Ellmaker, 14 S. & R. 121, and Munderbach *v.* Lutz, Id. 125. It will not add much to the weight of these opinions to say that I entirely concur with them, but I may be permitted to add that I sat for nearly twenty-three years in a court to which these acts were held not to apply. During all that time I never filed a written opinion or charge, nor was there ever found to be any necessity for it; the old well known remedy by bill of exceptions, *via trita, via tuta,* administering ample remedy to the suitors against the mistakes of the court upon points of law.

These two Acts of 1806 and 1856 both expressly require that there should be a request by one or other of the parties before the judge's charge can become a part of the record. In Brown *v.* Caldwell, 10 S. & R. 114, this court held that this request need not appear of record, because, where the opinion signed by the

[Alexander *v.* Weidner.]

judge is on file, the court could not suppose that it was his own voluntary, officious act, without request of either party, but must presume it to be his official act done by request at the time.    It matters not which party requested it.    It is of record, and consequently the subject of revision.    This case was, however, overruled by Lancaster *v.* De Normandie, 1 Whart. 49, in which it was held that this court will not consider any paper annexed to the record as furnishing the opinion of the court below, under the Act of 1806, unless it also appear by the record that the paper was filed at the request of one of the parties or of his counsel.    " The vexation and inconvenience of the practice, so faithfully depicted" (in Brown *v.* Caldwell), said Chief Justice GIBSON, " subsequently forced the court in various instances to exact a rigid compliance with the requirements of the act, and settle the practice differently."    " As the act authorizes nothing which it does not enjoin, when there has been no request it gives no authority to put the matter on the record at all.    It never was intended to permit the judge to set before the parties gratuitous incitements to appellate litigation, by exposing on the record errors which had escaped their notice at the time. Even restrained to its legitimate uses, the .proceeding has been found sufficiently prolific of vexatious and unprofitable contest.  By the express terms of the act the judge has authority to file his opinion of record, but at the request of a party desiring to have advantage from it ; and when he does it of his own head he makes nothing matter of record which was not so before."    This point, say the court in Bratton *v.* Mitchell, 5 Watts 71, " is not now open to question."

It has been urged that the Act of 1856, by the repetition of the word " shall" before the word " file," dispensed with any request to file, and that this difference between the words of that act and those of the Act of 1806 was designed by the legislature.    We cannot perceive any plausibility, much less force, in this contention.    The preliminary request limits the entire sentence ; but if it were so, it certainly would not avail, according to the authorities, unless the request to reduce to writing also appears of record.    The learned counsel appears to think that an exception amounts to a request to file.    That would be pushing construction beyond all reasonable limits, and it would be much better to return to the overruled doctrine of Brown *v.* Caldwell, that a request is in every case to be presumed.

Under these acts and the judicial construction which they have received, this plaintiff in error has no standing in this court.    On the trial below, the defendant, the present plaintiff in error, put certain points to the court in writing, to the answers to which he did not except.    The opposite party, however, did.    The answers of the court were filed, but the record does not show that they were filed at the request of either party.    They are therefore no part of

[Alexander *v.* Weidner.]

the record on which this plaintiff can assign error, and he certainly cannot avail himself of the exception of the opposite party.

It would not be right to dismiss this case without adverting to the 3d section of the Act of April 17th 1856 (Pamph. L. 396). That section provides : " That whenever the parties, or either of them, shall request the court to charge the jury on particular points of law, drawn up in writing and handed to the court before the close of the argument to the jury, the judge who charges the jury shall reduce the answers to the points to writing and read them to the jury before they retire from the bar to consider the verdict; and the said points and the answers thereto shall be filed immediately by the prothonotary and become part of the record of the case; and, when exceptions are taken to the charge of the court in the manner now practised, it shall be the duty of the judge who delivers the charge to file the same in writing with the prothonotary before the rising of the court or within thirty days thereafter." If this is a general law the case of this plaintiff in error is certainly saved by it. At first blush it would appear to be so, and the late Chief Justice WOODWARD evidently so regarded it in Wheeler *v.* Winn, 3 P. F. Smith 122, but it would seem, from his citation, that he took it from the digest, and his attention was not called to the whole act of which it forms a part. In Patterson *v.* Kountz, 13 P. F. Smith 251, I took occasion to express the opinion, that this law is not a general one, but confined in its application to the courts of the Sixth Judicial District. It was not necessary to the decision of the court in that case, and I was careful to say that it was my own opinion only. Since then, and in the study of this case, I have carefully reconsidered the question, and my opinion remains unchanged and is now confirmed by the concurring opinions of my brethren. The title of the act is, " An Act to provide for the election of an additional law judge of the Sixth Judicial District." Every other provision of the act is evidently confined to the courts of that district. The first section provides for the election of the additional judge. The second section directs when the courts shall be held in the several counties composing the district. It concludes, however, with this provision : " Questions of law which may arise before the president judge, or the said additional judge, may in the discretion of the judge be reserved for the determination of all the judges, either in term time or at such adjourned sessions as they may appoint and hold for the purpose." Then follows the third section, which is now in question and which has been recited at length above. It is to be observed it does not say " any " court or " a " court indefinitely, but definitely " the " court; grammatically the court before spoken of and about which alone, according to the title, the legislature was making regulations. It had not the words, " for other purposes," according to the old hackneyed form, now fortunately prohibited by the constitution. The fourth section, which provides for

[Alexander *v.* Weidner.]

the dates and return days of writs, is expressly confined to proceedings in "said court." And, in the fifth and last section, makes provision for special courts, "when both the president and additional judges of the Common Pleas of the Sixth District" should be disqualified for holding the same. We do not see how any one can read the whole act together without coming to the conclusion that the third section only relates to the courts of the Sixth Judicial District. On any other supposition it would be very strange and unaccountable that two acts, approved within two days of each other, the 15th April 1856, and the 17th April 1856, both pending no doubt before the legislature at the same time and on the same subject-matter, should yet contain provisions so variant.

Finding no error on this record of which the plaintiff in error can avail himself, Judgment affirmed.