## Rosenthal *v.* Ehrlicher et al., Appellants.

[Marked to be reported.]

*Banks and banking—Diligence in presenting check.*

Defendants drew a check in Philadelphia, where they resided, on a bank of that city. Plaintiff, who was the payee of the check, lived in the city of New York. The check was drawn and delivered to the agent of plaintiff at defendant's place of business in Philadelphia on May 5, 1891. The agent returned to New York on the afternoon of that day, and delivered the check to his principal, after the close of banking hours. On May 6th it was placed in bank for collection. The bank forwarded it to its Philadelphia correspondent for collection on May 7th. It was received and presented about noon of May 8th, but the bank had already closed its doors, and the check was not paid. *Held,* that plaintiff had used due diligence.

*Practice, Supreme Court—Assignments of error.*

An assignment of error should state the answer or instruction complained of, or the offer, the objection and the ruling of the court in the admission and rejection of evidence, and invariably in the latter class of cases the fact that an exception was taken and allowed by the judge should also appear in connection with the assignment.

It is improper to assign error as follows : " The learned judge erred in directing a verdict for the plaintiff upon the testimony of the plaintiff alone without allowing the defendants to offer evidence in support of their side of the case and in support of the affidavit of defence filed therein."

*Practice, C. P.—Exceptions—Stenographers.*

The appointment of a stenographer is the act of the court, and should be made a matter of record. The stenographer should be sworn and that fact, or, better, a copy of his oath of office should appear among the records of the court. When so appointed and qualified he becomes an officer of the court appointing him. His duty is to record fully and accurately all that transpires upon the trial of causes, all the oral testimony given, and all the instructions given by the trial judge to the jury. When an offer is made to prove a fact or to use a person as a witness, the offer should be entered at length on the stenographer's notes. If an objection is made to the admission of the evidence, or the person, this should also be put on the notes. When the court rules upon the offer the ruling should be fully and correctly set down. If an exception is taken to the ruling this should be stated, and if the judge directs that the exception be noted this fact should be stated. But the noting of an exception is the work of the judge. The stenographer cannot note one unless he is directed so to do by the judge trying the cause. If the judge refuses to allow an exception the stenographer should state the fact on his notes, but he should not attempt to note or allow an exception simply because an objection has been made and overruled in his hearing, nor because counsel request him to do so. The direction to note an exception or seal a bill must come from the judge. Per WILLIAMS, J.

When the stenographer's notes of trial have been duly filed of record, an appellant may assign as error any instruction appearing in the charge, or any answer to points, whether the particular point had been previously made or not.

It is not proper practice for the stenographer's notes to be certified to by a firm of stenographers in the firm name. Per WILLIAMS, J.

Argued March 22, 1893. Appeal, No. 203, Jan. T., 1893, by defendants, Alfred G. Ehrlicher et al., from judgment of C. P. No. 4, Phila. Co., June T., 1891, No. 281½, on verdict for plaintiff, Joseph Rosenthal. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit on check.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $155.26. Defendants appealed.

*Errors assigned* were : (1) That the court erred " in overruling the defendants' objection to the plaintiff's offer and submitting of check in evidence, as not being the check alleged in plaintiff's statement of claim, and upon which this suit is alleged to have been brought.

" (2) In overruling defendants' objection and allowing said check to be put in evidence by the plaintiff, as the holder thereof, without their first proving, or offering to prove, that the defendants as drawers thereof had sustained no loss or injury from any lack of diligence or due presentment and notice of the same by the plaintiff or his collecting agent or agents, before the failure of the bank on which said check was drawn, as they were required to do before they could be, or were in law, entitled to recover thereon.

" (3) In directing a verdict for the plaintiff, where by the evidence then submitted it appeared that three days had elapsed between the giving of the check to the plaintiff and the failure of the bank.

" (4) In directing a verdict for the plaintiff upon the testimony of plaintiff alone without allowing the defendants to offer evidence in support of their side of the case and in support of their affidavit of defence filed therein.

" (5) In refusing to allow the defendants to prove that said plaintiff's son Morris was plaintiff's authorized agent, with authority to indorse all checks drawn to said plaintiff's order and to present and draw the same at bank, and that said plaintiff's son had repeatedly indorsed said plaintiff's name on checks so drawn by the said defendants and others, similar to the alleged check in suit, and had received, receipted for, and collected the moneys and amounts thereon as such authorized agent."

*Joshua R. Serfass,* for appellants, cited : Gray v. Johnston, L. R. 3 H. of L. 1; Little v. Phœnix Bank, 2 Hill, N. Y. 425 ; Hare v. Henty, L. J. 30 C. P. 302; Moule v. Brown, 4 Bing. N. C. 266 ; Rickford v. Ridge, 2 Camp. 537 ; Bond v. Warden, 1 Collyer, 583 ; Alexander v. Burchfield, 1 Carr. & M. 75 ; Bohem v. Sterling, 7 T. R. 430 ; Morse on Banks and Banking, 281 ; Smith v. Miller, 43 N. Y. 171 ; Smith v. Janes, 20 Wend., N. Y. 192.

*Geo. P. Rich, Mayer Sulzberger* with him, for appellee, cited : Muncy Borough v. Com., 84 Pa. 464 ; Nat. Banking Co. v. Second Nat. Bank, 63 Pa. 404 ; National State Bank v. Weil, 141 Pa. 457 ; Rickford v. Ridge, 2 Camp. 537.

OPINION BY MR. JUSTICE WILLIAMS, May 1, 1893 :

The check sued on in this case was drawn by Erlicher Brothers, the appellants, in this city, where they reside, and on the Spring Garden Bank.   The plaintiff in whose favor it was drawn lived in the city of New York.   The check was drawn and delivered to the agent of the plaintiff at the defendants' place of business in Philadelphia on the fifth day of May 1891. He returned to New York on the afternoon of that day, arriving after the close of banking hours, and delivered the check to his principal.   On the sixth, it was placed in a bank for collection.   The bank sent it forward to its Philadelphia correspondent for collection on the seventh.   It was received and presented about noon of the eighth, but the bank had already closed its doors, and the check was not paid.   These dates, about which there seems to be no question, show the exercise of due diligence in the use, transmission and presentment of the check.   There was no suggestion of any defence upon the

merits. We see no error therefore in the direction by the learn-ed judge that the verdict should be in favor of the plaintiff. The only question really raised was that of diligence, and upon the uncontroverted facts that was a question of law for the court. The judgment must therefore be affirmed.

But there are other assignments of error before us that, while they raise no question, suggest the desirability of directing the attention of the bar to the purpose and office of assignments of error and bills of exceptions. For example, the fourth assign-ment is in these words : " The learned judge erred in directing a verdict for the plaintiff upon the testimony of the plaintiff alone without allowing the defendants to offer evidence in sup-port of their side of the case and in support of the affidavit of defence filed therein." No bill of exceptions accompanies or forms part of this assignment ; and we have examined the record for some evidence that such an offer and ruling were made on the trial as the assignment assumes ; but we find none. The as-signment must fall therefore because it rests on no offer or rul-ing such as it complains of. The fifth assignment complains of the refusal of the learned judge " to allow the plaintiff to prove that said plaintiff's son Morris was the plaintiff's agent, with authority to indorse all checks drawn to the plaintiff's order and to present and draw the same at bank." Neither in the assignment nor elsewhere in the record can we find that such an offer was made and refused. This assignment also falls in the same manner as the fourth. The purpose of an as-signment of error is to place upon the records of this court the specific ground of complaint on the part of the appellant. It should state the answer or instruction complained of, or the offer, the objection and the ruling of the court in the admission and rejection of evidence, and invariably in the latter class of cases the fact that an exception was taken and allowed by the judge should also appear in connection with the assignment.

Some little confusion has arisen, growing out of the changes consequent upon the general use of stenographers in the trial courts, and the differences of opinion entertained about the re-lation of the stenographer's notes to the record of an action at law. The practice formerly prevailing was well settled and well understood. Bills of exception to the admission and re-jection of evidence were, within the recollection of most law-

yers now in active practice, written out at length and signed and sealed at the trial. The bill so prepared contained the offer, together with so much by way of narrative as was thought sufficient to show the state of the evidence when the offer was made, the objections made to the admission of the evidence offered, and the ruling of the court upon the question so raised. At the foot of the paper the fact was noted that an exception was taken by the plaintiff or defendant, as the case might be, to the ruling of the court, and the correctness of the bill was attested by the signing and sealing by the judge. This completed the bill so far as that exception was concerned, and it was then put on the files and became part of the record in the action. This was a somewhat tedious process, and if several exceptions were taken it protracted the trial and caused delays that were inconvenient. In order to save time and facilitate trials, the practice sprang up of simply noting an exception when one was taken, and waiting till the trial was completed before making up the bills. This practice made it necessary to regulate by rules of court the time within which bills should be written out and presented to the trial judge for allowance. They were written out by the party who took the exceptions, and settled by the judge on notice to the other side, at a day fixed or at the convenience of those interested, as they might determine. When settled, signed and sealed, they were filed, and became part of the record in the same manner as though they had been written out at length on the trial. This practice had its disadvantages and its dangers, and it is now practically superseded by the recent legislation relating to stenographers. The several courts are now authorized to appoint stenographic reporters. The appointment is the act of the court and should be made a matter of record. The stenographer should be sworn, and that fact, or better, a copy of his oath of office should appear among the records of the court. When so appointed and qualified he becomes an officer of the court appointing him. His duty is to record fully and accurately all that transpires upon the trial of causes, all the oral testimony given, and all the instructions given by the trial judge to the jury. When an offer is made to prove a fact or to use a person as a witness, the offer should be entered at length on the stenographer's notes. If an objection is made to the admission of the evidence,

or the person, this should also be put on the notes. When the court rules upon the offer, the ruling should be fully and correctly set down. If an exception is taken to the ruling, this should be stated, and if the judge directs that the exception be noted this fact should be stated. But the noting of an exception is the work of the judge. The stenographer cannot note one unless he is directed so to do by the judge trying the cause. If the judge refuses to allow an exception he should state the fact on his notes, but he should not attempt to note or allow an exception simply because an objection has been made and overruled in his hearing, nor because counsel request him to do so. The direction to note an exception or seal a bill must come from the judge. When the stenographer's notes are completed in this manner they present a faithful transcript of all that occurred on the trial, and they show in their proper connection all that formerly went to make up a bill of exceptions. They take the place of the minutes of the trial formerly kept by the judge or under his direction, and the bills of exception formerly written out on the trial. These notes however do not become a part of the record because the stenographer certifies to their accuracy, but they are made part of the record by order of the court that they be written out and filed. When so filed they place upon the record a complete bill of exceptions upon every question on which an exception was in fact taken. Nothing could be simpler in practice. Nothing could be fairer to the judge or to the parties litigant. The entire trial is literally photographed upon the record. Under such circumstances it would be a waste of time and of legal formalities to settle a bill of exceptions under the old practice. The bill is already settled and on the record when the stenographer's notes are filed under the direction of the court, and they may be copied therefrom and printed without further ceremony by an appellant.

In regard to exceptions to the charge of the court the practice had been greatly modified by legislation before stenographers were introduced into the courts. Under the act of 1806, it will be remembered either party to an action might require the judge to reduce his opinion, together with the reasons therefor, to writing, " and to file the same of record in the case." The act of 1856 went a step further towards simplifying the work of excepting to the charge. It provided that either party

might require the judge to reduce his instructions to the jury to writing " at the time of the delivery thereof and forthwith file the same of record." When the charge was put on the record under either of these statutes, error might be assigned to any part of it, whether an exception had been taken to such part of it at the time of its delivery or not. A general excep- tion to the charge was all that was necessary. This brought it upon the record, and it was then open to correction in any particular. How should obedience to the law which required a judge to write out his charge " at the time of the delivery of the same " be compelled? This question arose in Patterson v. Koontz, 63 Pa. 246. It was there held that such refusal was not assignable as error because it afforded no ground for a re- versal of the judgment; but Justice SHARSWOOD, who deliv- ered the opinion of the court quoted and adopted the words of Chief Justice TILGHMAN in Moreberger v. Hackenburg, 13 S. & R. 28, as follows: " In executing this law every judge acts on his own responsibility." A still more severe requirement was laid upon the judges by the act of 1877. Under its pro- visions either party to an action was authorized to request the judge trying a cause to charge the jury upon particular points submitted to him in writing and to reduce his answers to such points to writing, and read them to the jury. The act further provides that the points with the answers thereto shall " be im- mediately filed by the court or judge, and become part of the records of the case for the purposes of error." But it does not stop here. As though fearing that this explicit language might be misunderstood it further provides that " the charge and an- swers of the court to points, in all cases, when filed shall be part of the record for the purpose of the assignment of errors." The intention of the lawmakers is thus made very clear that separate exceptions need not be taken, and should not be re- quired, in order to bring the whole charge under review. When once on the record the charge was open to attack in any part, and the appellant was at liberty to assign as many errors as he pleased. So the law stood when the legislation relating to stenographers began. The duty of reducing the charge to writ- ing, and of writing out the answers to points, has been transfer- red from the judge to the official stenographer. When these have been transcribed from the short-hand notes into type-

written or longhand copies, and filed in obedience to the directions of the court, the act of 1887 provides that "Either party may except to the same in the same manner, and with the same effect as is now practiced in regard to the judge's charge." The proper practice since the act of 1877 is to except to the charge generally before verdict, as was done before the passage of that act. The party excepting should at the same time request that the charge and answers to points be written out and filed by the stenographer. If other exceptions than that to the judge's charge have been taken the request may relate to the notes of the trial. This request may be entered on the stenographer's notes, but the better practice is to write it out and file it with the prothonotary. The request is then granted, the formal order directing that a copy of the charge, or of the notes of the trial, as the case may be, be written out and filed, is entered on the minute book or filed in the case. The stenographer then makes and files the copy and the record is completely made up. Upon an appeal the appellant may assign error to every ruling upon the admission or rejection of evidence which was excepted to on the trial, and to any instruction appearing in the charge, or any answer to points, whether the particular point had been previously made the subject of an exception or not. The effect of making the charge and answers to points a part of the record in the manner provided by the several acts referred to above, was considered in the recent case of Janney v. Howard, 150 Pa. 339. What was said in that case can gain nothing in force by mere repetition.

Before leaving the general subject of stenographers and stenographic notes, it is desirable to direct attention to another topic. Some records have been before us during the present term in which the stenographer's notes were certified to by a firm in the firm name. The question has not yet been raised whether such a certificate has any value, but if this practice is continued it soon will be. We do not see how a partnership can be an officer of the court. How shall it be sworn and its oath of office be entered on the record? How shall the work done by clerks or individual members of the firm be certified to? How shall the partnership be punished for the disobedience or misconduct of the individuals who compose it or the persons whom it employs? It would be equally practicable to fill a vacancy

in the office of sheriff, or prothonotary, or district attorney by the appointment of a business firm or a firm of lawyers, as to fill the office of official stenographer by the appointment of a firm of stenographers.   This declaration is not called for by this case, and it is of course obiter dictum.   Nevertheless the subject is of sufficient importance to parties and their counsel to justify us in calling their attention to it, in order that they may not suffer from it at a time when relief may be hard to reach.