## Connell, Sheriff *v.* O'Neil, Executrix, Appellant.

*Practice—Bill of exceptions—Evidence—Act of May 24, 1887.*

The only way by which matters of evidence may be placed upon the record in the Supreme Court is by bill of exceptions.

The legislation in regard to stenographers has merely changed the mode of making up the bill of exceptions while leaving its substance untouched. It is equally indispensable as it was before, and though noted by the stenographer, it is not his act but that of the judge. It is the duty of the judge to see that the bill is correct, and that his signature to it is a certificate of correctness on which the Supreme Court may rely.

Although the actual signing of an exception by the judge is not necessary when the exception is noted by his direction, yet such signing is the better and more desirable practice, for which the signature to the general certificate at the end of the record is by no means an adequate substitute.

*Charge—Points—Assignments of error.*

Where the judge does not sign a bill of exceptions as to the charge and answer to points, it should appear in some way affirmatively on the charge as reported by the stenographer that it was approved by the judge as cor-

rect, and filed by his direction. Without this, the filing by a stenographer is a nullity.

If the assignments of error are such as depend, for the correctness or their application to the case, on the evidence, and the evidence is not presented in a bill of exceptions, they cannot be considered, for they have no basis on which to rest.

*Execution—Death of defendant—Practice, C. P.*

A valid levy in execution is not destroyed by the death of the defendant.

*Execution—Reasonable stay.*

The lien of a levy is not lost by a reasonable indulgence to the execution defendant, given him in good faith to allow him to raise money to save his goods from sacrifice.

Argued March 20, 1893. Appeal, No. 185, Jan. T., 1893, by defendant, Mary A. O'Neil, executrix of Arthur O'Neil, deceased, from judgment of C. P. No. 4., Phila. Co., on verdict for plaintiff, Horatio P. Connell, sheriff. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Interpleader to determine ownership of fund in the hands of Jas. A. Freeman & Co., auctioneers.

At the trial, before WILLSON, J., it appeared that in January, 1891, an execution was issued against Arthur O'Neil. The sheriff, on Jan. 9, 1891, through his deputy, levied upon the stock in the coppersmith shop of O'Neil. With the consent of counsel for plaintiffs, time was given him to raise money to prevent his goods from being sacrificed. It did not appear that there was any definite time promised. Defendant, however, remained in possession. On Feb. 27, 1891, O'Neil died, leaving a will, in which his wife, Mary A. O'Neil, was named as executrix. Mrs. O'Neil took possession of the goods which had been levied upon, and sold them through James A. Freeman & Co., auctioneers, on April 10, 1891, for the net sum of $500. After the sale the sheriff claimed the fund from the auctioneers, and an interpleader was framed to determine its ownership.

Plaintiff offered to prove by Peter Saybolt, deputy sheriff, that, on or about Jan. 9, 1891, a writ of alias fi. fa. was lodged in his hands, in consequence of which he proceeded to levy on personal property at 243 South Front street. Objected to. Objection overruled and exception. [1]

The court charged in part as follows:

"It is between him [the sheriff] and the personal representative of the defendant, who stands, so far as this controversy is concerned, in the shoes of the defendant, having the same rights, so far as I see, and, under all the circumstances of this case, no higher rights than the defendant.] [2]    Therefore, it seems to me, the question comes down to this: [Were the goods which were sold by Freeman & Co., and the proceeds of which are in court, and the ownership of which is to be determined by your verdict, the goods which were levied on by the sheriff, or do they stand in any fair sense in the place of the goods which were levied on by the sheriff.] [3]    If so, it seems to me that it is a fair conclusion that the plaintiff is entitled to your verdict."

Defendant's points were, among others, as follows:

"2. Her possession as executrix dates back to the death of her husband, Feb. 27, 1891, even though she did not take out letters testamentary till the 17th of March.    The executor's sale was April 10th.    She was therefore in possession forty-two days.    She had no knowledge of any such claim as the sheriff now makes.    Her possession was open and notorious and not secret or surreptitious; I instruct you that she had a right, nay that it was her duty, to take possession of the goods just as she did and make sale of them just as she did.    *Answer:* 'I instruct you that she had a right, nay, that it was her duty, to take possession of the goods just as she did and make sale of them as she did.'    The point claims too much for affirmation. It is undoubtedly true, as a general rule, that an executrix is bound to take possession of the personal property, and sometimes it is their duty to sell—not always." [4]

"5. The possession of Mary A. O'Neil, executrix of Arthur O'Neil, deceased, of the stock and fixtures which was sold and produced the fund now in controversy, was the possession of the law, and she must be left to her accounting in the orphans' court, and your verdict must be for the plaintiff."    Refused. [5]

6. Request for binding instruction.    Refused. [6]

Verdict and judgment for plaintiff.    Defendant appealed.

*Errors assigned* were, (1) ruling on evidence, (2–6) instructions, quoting instructions and bill of exception but not evidence.

*Albert D. Wilson,* for appellant, cited: Buehler v. Gloninger, 2 Watts, 226; Chancellor v. Phillips, 4 Dal. 213; Schuylkill Co.'s Ap., 30 Pa. 359; Com. v. Steambach, 3 Rawle, 341; Cowden v. Brady, 8 S. & R. 510; Schouler on Ex. & Adm. § 201; Eisenbise v. Eisenbise, 4 Watts, 134; Hammett's Ap., 83 Pa. 392; Kittera's Est., 17 Pa. 416; Lindsey v. Barron, 6 C. B. 291; Bird v. Neff, Dist. Court Phila., Sept. 25, 1852.

*Julius C. Levi, William Grew* with him, for appellee, cited: Com. v. Ware, 26 W. N. 462; Dorrance v. Com., 13 Pa. 160; Brown's Ap., 26 Pa. 490; Hickman v. Caldwell, 4 Rawle, 376; McGinnis v. Prieson, 85 Pa. 116; 1 Trickett on Liens, 343, § 289; Lantz v. Worthington, 4 Pa. 155; Weir v. Hale, 3 W. & S. 285; Thorn's Case, 2 Pa. 331; Landis v. Evans, 113 Pa. 332; Schuylkill Co.'s Ap., 30 Pa. 358; Brown's Ap., 26 Pa. 490; Larzalere Co.'s Ap., 22 W. N. 101; Cowden v. Brady, 8 S. & R. 505; Chancellor v. Phillips, 4 Dal. 211; Levy v. Wallis, 4 Dal. 167.

OPINION BY MR. JUSTICE MITCHELL, May 8, 1893:

A preliminary question is raised in this case, of much importance in practice. The appellant has no bill of exceptions. There is therefore nothing before us but the bare record, and as that is regular on its face, there is no error on which the judgment can be reversed.

But the impression seems to have lodged in the minds of some practitioners, and even of some judges, that bills of exception are no longer necessary. There could not be a more serious misconception. A trial by jury takes place in pais, and no part of it goes on the record except the calling of the jury and their verdict, (or nonsuit or other equivalent of the action of a jury) unless put there in accordance with express statutory provision. The established mode of doing this, for six hundred years, has been by bill of exception, and it is still as necessary, and as sufficient for the purpose, as it was when enacted by the statute of Westminster. No better way has yet been invented, and as to matters of evidence, of witnesses, etc., *there is no other way.* To rulings upon the law and the charge to the jury, reference will be made further on.

The practice in regard to bills of exception, as at first writ-

ten out formally and sealed at the trial, then later, merely noted by the judge and the counsel at the trial, and afterwards for- mally drawn up, examined, sealed and certified by the judge, in accordance with rules of court, and finally, under the present practice, noted at the trial by the official stenographer at the direction of the judge, has been fully and accurately described by our brother WILLIAMS in Rosenthal v. Ehrlicher, at the present term, [154 Pa. 396,] and his description could gain no force or new light from repetition by me. But it seems to be necessary to reiterate the fact that the recent legislation in re- gard to stenographers has merely changed the mode of making up the bill of exceptions while leaving its substance untouched. It is still *the only way to get matters of evidence on the record*, and it is still the act of the judge. He is the head of his court, the repository of the judicial power of the commonwealth. The legislature has not intended to interfere with his functions in that respect, nor could it do so if the attempt were made. As said by WOODWARD, J., in Taylor v. Preston, 79 Pa. 436 : " In providing that the stenographic notes of the testimony in all proceedings in any trial of the facts, together with the charge of the judge, shall be deemed and held to be official, and the best authority in any matter of dispute; the legislature did not design to subordinate the power of the judge to the power of the stenographer. The administration of the law has been committed by the constitution to the courts, and the same con- stitution has provided that judges, and not clerks, shall compose those courts. Responsibility for the conduct of legal business must rest where it has been constitutionally lodged. The leg- islature would have no power, as they could have had no in- tention, to impose upon the clerk who records the details of the trial, the duties of the judge who tries the cause. The steno- graphic notes that are to be ' the best authority in any matter of dispute ' are the notes made up under the eye and direction, and with the approval, of the court." This language was used with reference to the act of 1874, but it is equally applicable to the subsequent acts on the same subject. The bill of ex- ceptions fills the exact place it always did, it is equally indis- pensable as it was before, and though it may be taken down by the stenographer yet it is not his act but that of the judge. As clearly said by our brother WILLIAMS in Rosenthal v. Ehrlicher,

*supra*, he can neither note an exception without the judge's direction, nor does his filing of his notes make them part of the record. That can only be done by the order of the judge for that purpose. When such order is given it is not necessary that the judge should actually affix his signature or seal, as was held in Chase v. Vandegrift, 88 Pa. 217, but the exception must be taken by the party, must be allowed by the judge, must be noted by the stenographer at his direction, and must appear on the bill, just as it did under the previous practice. And being thus, as it always was, the act of the judge, it becomes his duty to see that it is correct, and that his signature to the bill is a certificate of correctness on which this court can rely. As on the one hand his judicial functions cannot be taken away from him, so, on the other, they cannot be delegated by him to subordinates, even though called stenographers. He is free, of course, to avail himself of their assistance, but the act is his act, under his authority, and on his responsibility, and he should not only examine the bill personally but put on it, before it becomes by his order part of the record, some mark, either by his own hand or by express direction, of such examination and approval. The proper practice as to having the exception allowed and noted, is fully detailed by our brother WILLIAMS in Rosenthal v. Ehrlicher, *supra*, and I venture to add that, although under Chase v. Vandegrift, *supra*, actual signing of the bill by the judge is not necessary when the exception is noted by his direction, yet such signing is the better, and a very desirable practice, for which the signature to the general certificate at the end of the record is a very slovenly and by no means adequate substitute. In fact that certificate is by the court, not by the judge, in answer to the mandate of the writ from this court and, in courts consisting of more than one judge, is as often as not signed and sealed by other judges who did not try the case, and could not possibly certify to the correctness of the bill of exceptions.

No better illustration of the necessity for the judge's personal examination and approval of the bill could be needed, than the present case. What are apparently intended as notes of trial are not identified as such in any way. The name of a firm of three, styled official stenographers to the court, is printed at the head of the first page, but there is no signature or identification

even by the firm, and which of them took the notes does not appear, nor is there any certificate of any kind that this is all the evidence, or that what there is of it, is correctly taken. Moreover the type-written original is altered and interlined, sometimes in important particulars, with no indication at all when or by whom. Nothing could be more irregular and unprofessional. All of these matters would presumably have been corrected by the judge, as would certainly have been his duty, had the evidence been properly embodied in a bill of exceptions, and presented for his examination and approval.

In regard to the charge to the jury, including the answers to points presented by the parties, the several acts of assembly, of February 24, 1806, April 15, 1856, and March 24, 1877, have provided an additional way of getting them upon the record, besides a bill of exceptions, to wit, a filing by the judge upon request of a party. The act of May 24, 1887, P. L. 199, in relation to stenographers, makes it their duty to take stenographic notes and subsequently write out the charge for filing, and when filed it becomes part of the record. But what gives it authentication and validity as such, is the approval and certificate of the judge. It is his charge that is to be filed, and the filing must be his act, though he need not necessarily sign or seal it with his own hand. As said by WOODWARD, J., in Taylor v. Preston, already quoted from, "the stenographic notes that are to be 'the best authority in any matter of dispute' are the notes made up under the eye and direction, and with the approval of the court. They have then the effect of the prothonotary's certificate of the record of a cause, and are subject to be modified and molded in accordance with what may be judicially found to be the fact, precisely as its records are always subject to the court's control." It is much the better practice for the judge to settle all doubt or question as to the charge, as well as the evidence, by signing the bill of exceptions, but where that is not done, it should appear in some way *affirmatively on the charge as reported by the stenographer*, that it is approved by the judge as correct, and filed by his direction. Without that the filing by the stenographer is a nullity.

When the charge has been thus filed, by the judge's direction at the express request of a party made before verdict, and only

when such direction affirmatively appears, the charge becomes part of the record, and is assignable for error: Lancaster v. De Normandie, 1 Wharton, 49; Meese v. Levis, 13 Pa. 384; Alexander v. Weidner, 82 Pa. 452. In the recent case of Janney v. Howard, 150 Pa. 339, it was held that the charge being on record, any part of it is assignable for error, though no exception appears to have been taken in the court below. This result, much as it is to be deprecated, seems necessary under the language of the act of March 24, 1877, that the charge when filed " shall be part of the record for the purpose of assignment of errors." This is part of that delusive idea of cheap law reform which appeals at all times so strongly to the popular and even to the superficial and unobservant professional mind, and which still flourishes though it has been pronounced futile, mischievous and productive only of expense, delay and injustice, by the greatest and most experienced jurists of the commonwealth from Chief Justice TILGHMAN to Chief Justice SHARSWOOD. The remarks of the latter in Alexander v. Weidner, 82 Pa. 452, upon the act of 1806, are forcibly applicable to much of the law-made-easy reform of the present day. It was, he says, " intended by that legislature to inaugurate a new administration of justice, in which the profession of the law might be entirely dispensed with, and every man be his own lawyer and conduct his own suits. It need not be said that it entirely failed to secure its main object, and that the only class of men benefited by it, was that at whose business it was aimed. An abundant harvest of litigation followed, and its deleterious influence has left many marks upon our jurisprudence which still remain to impede and embarrass the speedy and regular course of justice in civil proceedings."

It ought not to be necessary, and yet it seems to be so, to say that the true office of an assignment of error is not to act as a trap to catch the judge who tried the case, and give the appellant an undeserved second or extra chance before another jury, but to secure the uniform administration of the law, and correct application to' each case of the principles really essential in their bearing on the rights of the parties. That duty is committed to this court, as a single tribunal, having the advantages of fuller preparation and presentment of the cases by counsel, and more opportunity for investigation and delibera-

tion, than is possible for the trial courts in the presence of the jury. Yet if charges not excepted to at the time of delivery, are to be subject to minute overhauling by counsel under the spur of an adverse verdict, and with the added wisdom that comes after a contest has been fought and lost, this court will speedily find itself in a dilemma, either horn of which will be destructive to justice. Either it must reverse whenever there is error, though it be an accidental misnaming of the witness testifying to a certain fact, the misrecital of a date, the transposition of the names of parties or other mere slip which would have been instantly seen and corrected had attention been called to it at the time, either any plain error however small must necessitate a reversal, or on the other hand, we must begin to distinguish between errors, not as the established rule is, those which might and those which could not as matter of law injure the party complaining, but those which did and those which did not in fact do so before the particular jury, so that that which may be error sufficient to reverse one judgment, may be equally plain error but not enough to reverse in another case. The first alternative tends to gross injustice in particular cases, the second to the perhaps greater evil of uncertainty in the administration of the law.

The statute however which entails these evils, applies only to the charge. Matters of evidence, the competency of witnesses, and other incidents of the trial, are not affected by it. All such matters must appear on a bill of exceptions, and no assignments of error in reference to them, or which depend upon them, can be considered unless the bill shows that the exception was taken at the trial in the court below. As to such matters the case of Janney v. Howard, supra, has no application whatever. Even as to assignments of error in the charge, if they are such as depend for their correctness or their application to the case, on the evidence, and the evidence is not presented in a bill of exceptions, they cannot be considered, for they have no basis on which to rest.

It would be sufficient to dismiss this appeal, for want of a bill of exceptions to bring up the evidence, upon which the correctness of the charge depends. But as counsel may have been misled by the erroneous notion adverted to, we have looked into the case, as presented in the irregular notes of trial, and find no merit in any of the assignments.

It was a contest between the sheriff and the executrix of the defendant in an execution, as to the right to a fund in the hands of the auctioneer. The sheriff claimed that the goods had been levied on by him in the lifetime of the defendant, and had been eloigned without his knowledge. The executrix claimed that some of the goods had not been levied on at all, and that as to others the lien of the levy had been lost by delay. The auctioneer disclaimed any interest in the fund except for his commissions, and only asked to pay the right party. It was therefore a proper case for interpleader, and turned on two questions of fact, the identity of the goods, and the continuance of the lien of the levy. The judge left both of these questions to the jury, instructing them that a valid levy in execution is not destroyed by the death of the defendant, and that the lien of a levy is not lost by a reasonable indulgence of the defendant debtor, given him in good faith to allow him to raise money to save his goods from sacrifice. There was no error in these instructions. Property in actual course of execution, is not taken out of the custody of the law, and the creditor sent into the orphans' court, by reason of the death of the defendant owner, pending the sale. The grasp of the law having once validly attached, its officer must go on and complete his duty. On the other point it would be a harsh doctrine to hold that in a case where no other creditor was unduly postponed or otherwise injured, a creditor could not grant a humane indulgence to his debtor without losing his execution altogether. The law does not make so hard a rule.

Judgment affirmed.