BROOKSIDE MILLS *v.* RAILWAY EXPRESS AGENCY.

(*Knoxville,* September Term, 1935.)

Opinion filed June 13, 1936.

LEE, COX, MEEK & HIER, of Knoxville, for Brookside Mills.

JOHNSON & JOHNSON, of Knoxville, for Railway Express Agency.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by plaintiff to recover of defendant $741.13, the amount alleged to be due for express charges on goods transported by plaintiff from points in the state of New York to the defendant in Knoxville. There was a judgment for the plaintiff below, affirmed by the Court of Appeals, and we have granted the writ of *certiorari*.

The plaintiff, as its name indicates, is an express company carrying packages over railway lines throughout various states of the Union. The declaration avers that its principal office is in Atlanta, Georgia. However, it has an office and agency in Knoxville and did business in the latter city amounting to about $1,200 a day at the time of the transactions out of which this suit arose.

On January 17, 1933, or on previous days, two consignments of goods were delivered by plaintiff to the defendant. On one of these shipments, consisting of 119 pieces, the express charges were $726.35. On the other shipment the charges were $14.78, making a total of $741.13. The agent of the Express Agency called at the

Brookside Mills about 11 A. M. on January 17 to collect these charges. Not having enough cash on hand to pay the charges, Brookside Mills gave its check to the agent of the Express Agency. This check was drawn on the East Tennessee National Bank of Knoxville for the amount due.

It seems that Railway Express Agency did not keep a bank account in Knoxville at this time, although it had previously done so. The check, drawn to its order by Brookside Mills, was forwarded by an agent of the Express Agency at Knoxville to the Atlanta office and reached Atlanta on the next day after it was drawn. It was deposited by the Express Agency in an Atlanta bank as soon as practicable and forwarded without delay, except for an intervening holiday by the Atlanta bank to the Federal Reserve Branch Bank at Nashville, to be forwarded by the latter institution to Knoxville for payment.

The East Tennessee National Bank was open for business all of the day of January 17, 1933, the day the check was issued, and all of the succeeding day, January 18, 1933. During these two days the bank met all legitimate demands presented but did not open its doors on January 19. During the two days Brookside Mills had a balance to its credit in the East Tennessee National Bank of approximately $20,000.

So it was, before the check involved reached Knoxville, the East Tennessee National Bank had closed its doors. The check would not have gotten back to Knoxville in time for presentation before the East Tennessee National Bank closed had it been deposited in Atlanta and sent directly for collection instead of having been sent

for collection through the Federal Reserve Branch Bank at Nashville.

The general rule prevailing in Tennessee and in other states is that the payee has until the close of the next business day to present a check for payment where the bank on which the check is drawn is in the same place where the payee receives the check. This was the rule prior to the adoption of the Negotiable Instruments Law and has not been changed by that statute. *Schoolfield & Hanauer v. Moon,* 56 Tenn. (9 Heisk.), 171; *Andrews v. German National Bank,* 56 Tenn. (9 Heisk.), 211, 24 Am. Rep., 300; *Kirkpatrick v. Puryear,* 93 Tenn., 409, 24 S. W., 1130, 22 L. R. A., 785; *Binghampton Pharmacy v. Bank,* 131 Tenn., 711, 176 S. W., 1038, 2 A. L. R., 1377. Cases from other jurisdictions are collected in a note, 91 A. L. R., 1191.

In *Kirkpatrick v. Puryear, supra,* it is said that, if the bank on which the check is drawn is not located in the same town in which the check is received, it is the duty of the payee to forward the check for collection on the day after its receipt. This rule prevails in other jurisdictions in the absence of special circumstances. See cases collected in a note, 91 A. L. R., 1199.

Section 7510 of the Code, section 186 of the Negotiable Instruments Law, provides:

"A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

Section 7517 of the Code, section 193 of the Negotiable Instruments Law, provides:

"In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature

of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case.''

■ Under ordinary circumstances what is a reasonable time for the presentation of the check is determined according to the cases just above cited. The case before us is different. While the check was received in the same town where the drawee bank was located, it was received by an agent of the plaintiff to whom plaintiff had not intrusted authority to indorse such instruments for collection. It was duly forwarded, apparently, to the nearest agent of plaintiff having such authority.

If the receipt of this check by an agent of plaintiff in Knoxville had been an isolated transaction, as the collection of an account for his employer by a traveling salesman, or if the defendant had been advised of plaintiff's method of handling checks received in Knoxville, we would agree that the lower courts had reached a correct conclusion. Upon such facts the conclusion of the lower courts would be fully sustained by the authorities upon which plaintiff relies. *Lewis, Hubbard & Co.* v. *Montgomery Supply Co.*, 59 W. Va., 75, 52 S. E., 1017, 4 L. R. A. (N. S.), 132; *Balkwill* v. *Bridgeport Wood Finishing Co.*, 62 Ill. App., 663; *Rosenthal* v. *Ehrlicher*, 154 Pa., 396, 399, 26 A., 435; *Petty* v. *Ozark Grocer Co.*, 187 Ark., 595, 61 S. W. (2d), 60.

■ We are referred to no case precisely in point. As heretofore stated, Railway Express Agency does a considerable business in Knoxville and maintains an agency and office there. Its collections in that city amount to about $1,200 a day, and 40 per cent of those collections consist of checks. This means that the plaintiff takes in checks aggregating about $480 each

day in Knoxville, or checks amounting to about $175,000 during the course of the year.

We are of opinion that the plaintiff maintaining an agency in Knoxville, such as it does, doing so large a business there, and handling so many checks there, should be required to conform to custom and law that control the transactions of other individuals and institutions doing business in that city.

We do not think that the plaintiff, with the organization it maintains in Knoxville, doing such a volume of business there, accepting checks in the prosecution of its business to such an extent, should be relieved of the ordinary obligation with reference to presentation resting upon the payee of a check drawn on a bank in the city in which it is received. We do not feel that plaintiff is entitled to exceptional treatment because for its own convenience it chooses to collect checks received in Knoxville and drawn on Knoxville banks through an agency maintained in another city.

As above noted, more than half of the daily collections by plaintiff in Knoxville are in cash. It is the custom of the Knoxville agent each day to send the cash collected and the checks received to the Atlanta office. The money and checks are forwarded through a messenger of Railway Express Agency on one of its cars running daily over the Louisville & Nashville Railroad Company's line from Knoxville to Atlanta. We see no particular hazard or burden that would be imposed upon the plaintiff in consequence of authority to its Knoxville agent to indorse and collect its Knoxville checks and send the proceeds along with his cash collections. Indeed, the company is not required to take checks at all if it finds such a custom too inconvenient.

We think the principle applicable to this case has been stated by the Supreme Judicial Court of Massachusetts. A co-operative bank in that state, which appears to be an institution somewhat like a building and loan association, collected fixed periodical installments from its members each month for the purpose of lending its accumulations to its members and otherwise investing funds not so needed. The collections of the co-operative bank involved amounted to approximately $75,000 monthly divided into four thousand small payments substantially all made during the week of the monthly meeting and by far the greater proportion on the day of the meeting and the Saturday following. More than one-third of these payments were made by check. Upwards of five hundred checks would be so received, and it was practically impossible for the institution with the force it kept to list and deposit all these checks so as to have them presented to banks in the same city on the day of their receipt or the day after. Other facts are recited in the opinion of the court and the co-operative bank was denied a recovery against one of its customers from whom it had taken a check, which check was not presented to the drawee bank in the same city within the time permitted by the usual rule. The court said:

"Commonly, one who deals extensively in the receipt of checks for collection in its ordinary business must conform to the general rules of law as to their presentment and collection." *Lowell Co-operative Bank* v. *Sheridan*, 284 Mass., 594, 188 N. E., 636, 639, 91 A. L. R., 1176.

Considering "the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case" as required by section 7517 of the Code, we do not think that the check here involved was pre-

sented for payment within a reasonable time after its issue as required by section 7510 of the Code.

Reversed and dismissed, on authority of *Betterton* v. *Roope,* 71 Tenn. (3 Lea), 215, 31 Am. Rep., 633, and *Kirkpatrick* v. *Puryear, supra.*

CHAMBLISS, J. (dissenting).

With great deference, I am constrained to non-concur in the opinion of the majority. It is true that in Tennessee and generally, the rule is held to be that where both drawer and drawee of a check reside in the same town where the drawee bank is located, the check must be presented before closing hours of the second day. But this time limitation rule is not absolute. It is consistent with, and to be construed in connection with, the basic rule of due or reasonable diligence, and with the general exception that "delay is excusable when it is caused by circumstances beyond the control of the holder and not imputable to his default, misconduct or negligence." 91 A. L. R., note, p. 1188; *Commercial Inv. Trust* v. *Lundgren-Wittensten Co.,* 173 Minn., 83, 216 N. W., 531, 56 A. L. R., 492; *Russell* v. *Buxton,* 181 Minn., 104, 231 N. W., 789. Or, as said in *Springfield* v. *Green,* 7 Baxt., 301, "It is incumbent on the creditor to show that he demanded the payment of the check in a reasonable time, and that payment was refused; or he must show a valid excuse for failing to make presentment in proper time;" this "proper time" being, under our holdings, two days.

That the two-day period is not absolute is fairly deducible from the fact that our negotiable statute quite significantly fails to provide for it; but, to the contrary, expressly leaves the question of "reasonable time" for determination on "the facts of the particular case."

I think that the sufficiency of the excuse for delay, beyond the *prima facie* proper time two-day period, which is the determinative issue, is to be tested by the circumstances controlling the holder of the check; whether or not, under the circumstances, default, misconduct, or negligence, *after receiving the check,* is imputable to the holder. I can find none here.

Not at the request of the Express messenger, or local agent, with quite commonly recognized limited authority to endorse the corporate name (2 C. J., p. 636, citing *Jackson* v. *Bank,* 92 Tenn., 154, 20 S. W., 802, 18 L. R. A., 663, 36 Am. St. Rep., 81), but at the election of the Mills, for its convenience, and contrary to the custom of these parties, this check was issued, and made payable, not to the messenger, or to any resident agent, but to the order of the corporation, with headquarters in Atlanta. Now this the Mills elected to do, instead of making it payable to a local agent, the driver, or to bearer, or to cash, which would have conformed the method of payment more closely and naturally to the usual practice between the parties. If the Mills had followed this latter course, no loss would have occurred, *certainly none to the Mills.* I have referred to the Mills having elected or chosen to draw the check as it did do. The Mills cashier testified that the Express driver, Mr. Hampton, presented the bill and "I just told him I didn't have that much cash on hand, and I would have to give him a check, and that is all there was to it." Mr. Hampton says he suggested that the check be made payable to Mr. Dale, a local agent of the Express Company, but conceding that he is mistaken about this, or that the cashier did not so understand him, it is quite apparent that the Express Company's representative was in no degree

responsible for the fact that the check was made payable to the corporation, necessitating its transmission to Atlanta. Now looking directly to the conduct of the holder, wherein does negligent delay appear—unless it was negligence for the Express driver, or messenger, to accept this check so payable?

From that moment the holder did all that could reasonably have been done to make prompt collection, in view of the form in which the Mills had elected to draw its check. It was put in the speediest course of collection available or practicable. This seems to be conceded.

As I understand the view of the majority opinion, the finding of negligence is predicated on the failure of the Express Company to maintain a bank depository in Knoxville, or to vest authority in a local representative to indorse the name of the corporation on checks and collect the same from a local bank drawee.

I think this exacts too much of the Express Company, and involves a denial to it of the exercise of a discretion belonging to it in the management of its corporate affairs. Particularly is this so when financial conditions existing at that time are considered. It is a matter of common knowledge that banks were closing and failing all over the country in January, 1933, and that Knoxville was a special sufferer in this regard. Surely this company was not required, in the exercise of reasonable diligence and for the accommodation of its local customers, whose obligations were payable in cash, and made by check only for their convenience, to run the risk of maintaining an account in a Knoxville bank; nor, it seems to me, of vesting in some minor local representative authority to indorse the corporate name on checks if made so payable, contrary to the general rule.

I find nothing in our Tennessee cases requiring such a holding. The substance of these cases, in harmony with the decisions generally, is that the holder has two days, without necessity of making excuse or explanation, in which to present the check to the drawee bank in the same town where taken; but if presentation is not made until after two days, the burden then is upon the holder to "show a valid excuse for failing to make presentment in proper time," that is, in the two days generally recognized as the proper time.

I think this case may be distinguished from *Lowell Co-op. Bank* v. *Sheridan,* 284 Mass., 594, 188 N. E., 636, 91 A. L. R., 1176, particularly in this, that there the drawer payee and drawee were all in the same town, while here the drawee was, in the sense controlling endorsement and collection, in a different town, to-wit, Atlanta, and the drawer elected to make the check so payable.

I am influenced by another consideration. We have here a finding in favor of the Express Company by the trial judge sitting without a jury, affirmed by the Court of Appeals. Unless it is to be said that, as a matter of law, the loss falls on the Express Company because of its failure to present the check within two days, thus treating this period as an absolute limit in law, then the case turns on a question of fact, that is, whether reasonable diligence was shown by the holder. I understand the rule to be that where either (1) the evidence is in conflict as to the facts, or (2) reasonable minds might differ as to the effect of the undisputed facts upon the issue (here the matter of the exercise of diligence), the question is for the jury, or, in a non-jury case, for

the judge, subject to review on the question only of material evidence to sustain. In this view, we have a finding by the trial judge concurred in by the Court of Appeals on the determinative fact.